A93A0331. BELLSOUTH ADVERTISING & PUBLISHING CORPORATION v. McCOLLUM.
(433 SE2d 437)

BLACKBURN, Judge.

The appellant/plaintiff, BellSouth Advertising & Publishing Corporation (BellSouth), brought the instant breach of contract action against the appellee/defendant, Dean McCollum, based upon an alleged order for advertising in the 1990 Yellow Pages placed by defendant.

BellSouth introduced and relied upon a directory advertising or-

der form, dated September 1, 1989, which document was completely filled-in at the time of trial and contained the signature of defendant. The document was admitted as a business record without objection.

Defendant testified that although he did sign the directory advertising order on September 1, 1989, he did so because he was told by the BellSouth representative that this was necessary in order to initiate the artwork on the proposed ad, and the order was not completed and contained no agreement as to the price of the advertising at the time he signed it, or at any other time material to the subject action. BellSouth's sales representative did not testify and plaintiff offered no direct testimony to refute defendant's statements concerning the events of September 1, 1989, or the fact that the price of the ad was not agreed upon by the parties at the time the contract form relied upon by plaintiff was signed, or at any other time material to the subject action. Susan Anderson, an assistant manager in customer service and custodian of BellSouth's records, testified that it is the customary practice for BellSouth's representatives to complete the order forms at the time the order is signed; she admitted, however, that she was not present during McCollum's meeting with the representative.

McCollum asserted several defenses and a counterclaim for attorney fees and expenses of litigation. After the commencement of discovery, BellSouth moved for summary judgment. The trial court did not issue a decision on BellSouth's motion as McCollum's attorney stated he had not timely received a copy of same and the action proceeded to a bench trial, after which the trial court entered a judgment in favor of McCollum. The court concluded that the parties never agreed to the terms and content of any advertisement to be published by BellSouth and the contract lacked the mutual assent necessary for validity. This appeal followed:

Shortly after the meeting of September 1, 1989, McCollum testified that he received a telephone call from the representative that he had met earlier and was informed that the advertisement was ready for presentation to McCollum. McCollum averred that he informed the representative that he wanted to make changes in the layout of the advertisement and the representative indicated that the changes could be made as requested and he would contact McCollum after the changes were made. Anderson admitted that documentation in BellSouth's files corroborated the discussion that McCollum had with the representative concerning the changes in the advertising layout. McCollum further testified that he received a subsequent telephone call from the representative who informed him that he would need to make a decision on the advertisement, at which time he asked the representative if the changes in the advertisement had been made as requested. When told by the representative that he was unable to

make the changes as agreed, McCollum informed the representative that he would not complete the agreement to place the subject ad and would wait and place the changed ad in a future directory.

BellSouth published the ad anyway in its 1990 Yellow Pages directory but did not submit a monthly bill to McCollum for the allegedly due monthly advertising expense of $399.99, for approximately ten months following the publication of the 1990 Yellow Pages directory, at which time they sent a single, cumulative bill. The undisputed testimony of McCollum was that he never received any further bills from BellSouth after returning the original bill to it and that he never paid for the advertisement.

Kenneth Young, a directory advertising sales representative, was assigned to McCollum's account in the summer of 1990, to prepare for the 1991 Yellow Pages directory. Young testified that he left messages for McCollum over a two-and-a-half month period but did not receive a return telephone call from him. Young also testified that thereafter, he forwarded to McCollum's attention a certified letter informing him of the upcoming directory issue and the increase in the monthly rate, and included therewith a copy of the directory advertising order for 1991. No return receipt was offered into evidence. Young testified that once he received notification from the post office that the letter had been delivered as addressed, he forwarded a pre-printed order form to the advertising department for publication. This was done by BellSouth with full knowledge of the nonpayment and dispute concerning the 1990 advertising which they were seeking to "renew." Young admitted that he had never seen or spoken with McCollum. McCollum testified that he has never received any telephone calls or notices concerning the past due nature of any account with BellSouth, with the exception of the bill received by him in September 1990.

McCollum testified that in mid-August 1990, another BellSouth representative, Vickie Berry, telephoned him to determine if he was interested in placing an advertisement in the 1991 Yellow Pages directory, at which time he informed her that he had never placed an ad in the 1990 Yellow Pages directory and did not want an ad in the 1991 Yellow Pages directory. At that time, McCollum testified that he was informed that he needed to sign a release form to cancel the ad contained in the 1990 Yellow Pages directory. On August 23, 1990, based upon the representations of Berry, McCollum signed a pre-printed order form of that date which he understood was necessary to resolve the matter of the 1990 advertisement. In view of the trial court's holding that there was no contract between the parties as to the 1990 advertisement, there was nothing to be renewed by the August 23, 1990, renewal form.

1. In its first enumeration of error, BellSouth contends that the trial court erred in refusing to consider and rule on the motion for

summary judgment. However, the trial transcript shows that in response to the statement made by McCollum's counsel that he only recently received the motion for summary judgment, the trial judge specifically stated that he would not address the merits of the motion for summary judgment. BellSouth did not protest the ruling of the trial court. Where a motion for summary judgment is overruled and the case is tried, the appellate court will review the evidence in support of the judgment as well as other enumerations of error, but because the same issues are involved, the court will not review the denial of a motion for summary judgment. *Rothstein v. Mirvis & Fox, Inc.*, 155 Ga. App. 79 (270 SE2d 301) (1980). The refusal of the trial court to rule on the motion for summary judgment in the instant case is equivalent to its having overruled same and this enumeration is without merit.

2. In its second enumeration of error, BellSouth contends that the trial court erred in allowing parol evidence to vary or explain the terms and conditions of the purported advertising contract because the contract was unambiguous, properly executed and enforceable. We disagree.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. " 'A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible.' [Cits.]" *White & Assoc. v. Decker & Hallman, P.C.*, 203 Ga. App. 14, 15 (1) (416 SE2d 352) (1992). "The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." OCGA § 13-3-2. Further, as price is an essential element of a valid contract, an alleged contract on which there is no firm agreement as to the price is unenforceable. See *Charter Investment &c. Co. v. Urban Med. Svcs.*, 136 Ga. App. 297, 298 (2) (220 SE2d 784) (1975). In *Progressive Life Ins. Co. v. Reeves*, 89 Ga. App. 900 (81 SE2d 519) (1954), we held that a blank note signed and delivered to an agent without any understanding or agreement between them as to the amount that the note was to be filled in for, or as to the due date, was not a binding and enforceable obligation, as the note was never delivered for the purpose of giving it the effect of a written obligation to pay money and neither party assented to all the terms and conditions of the note. Cf. *Cohen v. William Goldberg & Co.*, 202 Ga. App. 172, 174 (1a) (413 SE2d 759) (1991), rev'd in part on other grounds, 262 Ga. 606 (423 SE2d 231) (1992).

Although parol evidence cannot be used to contradict or vary the terms of a valid written agreement, "parol evidence may be used to show no valid agreement ever went into existence. [Cits.]" *C & S Nat.*

*Bank v. Williams*, 147 Ga. App. 205, 207-208 (249 SE2d 289) (1978); *Cohen*, supra at 174. In the instant action, McCollum's testimony was not admitted to vary the terms of the written order form. Contrary to BellSouth's contentions, the trial court allowed McCollum to testify to the circumstances surrounding the signing of the advertising order to establish whether there was mutual assent to its terms and whether the order, in fact, constituted a valid contractual agreement. As we stated in *Jackson v. Easters*, 190 Ga. App. 713, 714-715 (379 SE2d 610) (1989), "[i]f there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement . . . it must follow that a valid and binding contract was not made. . . ." (Citations and punctuation omitted.) McCollum's testimony as to the incompleteness of the document at the time that he signed it was not contradicted by anyone with personal knowledge of the transaction on September 1, 1989. Further, there is no evidence that McCollum ratified the price of the ad by payment or otherwise. Consequently, the trial court held that, as the parties did not mutually assent to an essential term, there was no meeting of the minds and the order form did not constitute a valid contract.

The trial court weighed the evidence, determined the credibility of the witnesses, and found in favor of McCollum. "On appeal, we do not weigh the evidence nor do we determine its sufficiency, but look only to see whether there was evidence to enable the [factfinder] to find as it did; wherever there is any evidence to support the verdict, all conflicts in evidence are resolved in favor of the [factfinder's decision] and we are bound to affirm it. [Cit.]" *Hightower v. Cox*, 204 Ga. App. 105, 107 (418 SE2d 613) (1992). Consequently, we cannot say that the decision of the trial court was clearly erroneous.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Beasley, P. J., Cooper and Smith, JJ., concur. Andrews and Johnson, JJ., dissent.*

JOHNSON, Judge, dissenting.

The parol evidence offered by defendant/appellee McCollum at trial should not have been allowed to defeat the unambiguous language of the contract for advertising admittedly signed by him. The Directory Advertising Order specifically provided that publication of the advertising would continue until canceled in writing, as well as a merger clause which stated that "This order, if accepted by us, and any associated printing orders are our entire agreement with you." The accompanying printing order also contained McCollum's signature under the statement "As an authorized representative of the above named firm, I have reviewed the advertising copy shown and find it to be correct. I understand that this printing order is subject to

the Terms & Conditions of the associated Directory Advertising Order. . . . ." As this court recently held, " 'Parol evidence is inadmissible to add to, take from, or vary a written contract.' OCGA § 13-2-2 (1). Even if consideration of circumstances surrounding the execution of the agreement creates an ambiguity, '(w)here the contract is complete on its face and the evidence offered to explain the ambiguity contradicts the terms of the written instrument, it should not be admitted. (Cits.)' [Cit.]" *Loveless v. Sun Steel*, 206 Ga. App. 247, 248-249 (424 SE2d 887) (1992). The advertising was published and McCollum received the benefit of that advertising. I believe that the trial court erred in considering the parol evidence and in excusing McCollum from performance of his obligations under the contract. Accordingly, I would reverse the trial court.

I am authorized to state that Judge Andrews joins in this dissent.

DECIDED JULY 13, 1993.

*Strongwater & Cherniak, Jay L. Strongwater, Leeza R. Cherniak*, for appellant.
*Robinson & Harbert, John E. Robinson*, for appellee.